# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| MARK ZUCCA, | ) | CASE NO. 5:21-CV-01345-CEH |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| v. | ) | |
| | ) | |
| FIRST ENERGY SERVICE CO., *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendant, | ) | |

This matter is before the Court on cross motions for judgment on the administrative record under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001-1464 ("ERISA"). The Plaintiff asks this Court to (1) find the services provided by Dr. Elise Roberts ("Dr. Roberts") should be treated as an in-network provider, (2) issue an Order awarding plaintiff damage for costs previously paid by him directly, and (3) award reasonable attorney's fees pursuant to 29 U.S.C. §1132(g)(1), and Court costs. (ECF No. 28 at 1) The Defendants ask this Court to (1) enter judgment in Defendants' favor as there is no genuine issue of fact for trial. (ECF No. 29 at 1). Additionally, Defendant filed a Motion to Strike Exhibits 1 and 2 attached to Plaintiff's Reply in Further Support of his Motion for Judgment on the Administrative Record. (ECF No. 34 at 1).

Having reviewed the cross motions, the First Energy Health Care Plan ("the Plan"), the Administrative Record ("Record"), and relevant caselaw, this Court GRANTS Defendants' Motion to Strike Exhibits 1 and 2 attached to Plaintiff's Reply in Further Support of his Motion for Judgment on the Administrative Record (ECF No. 34), DENIES Defendants' motion for

1

judgment on the administrative record (ECF No. 29), and GRANTS Plaintiff's cross motion for judgment on the administrative record (ECF No. 28).

I. Background

The background facts of this case are not in dispute. Plaintiff, Mark Zucca ("Mr. Zucca") is an employee who is an eligible participant in the First Energy Healthcare Plan. Mr. Zucca filed a complaint under ERISA, against First Energy Service Company ("FESC") and Company Insurance Company d/b/a Anthem Blue Cross and Blue Shield ("Anthem"), (collectively, "Defendants"). Mr. Zucca received health benefits through his employer under the Plan, which is governed by ERISA. (ECF No. 21 at 143[1]).

A. A.Z.'s Medical Diagnoses and Treatment.

Mr. Zucca's son ("A.Z.") is a nine-year-old boy who was diagnosed with autism spectrum disorder, mixed receptive language disorder and disruptive behavior in a pediatric patient. Since being diagnosed, A.Z. has been treated by two speech/language pathologists Gina Rowland ("Rowland") and Ashton Gress ("Gress"). The Record indicates that after treating A.Z. for five-years Rowland determined A.Z.'s needs were "beyond the scope of early intervention and that A.Z. required more than she could provide." (ECF No. 21 at 75-76.) After treating A.Z. for three-years, Gress concluded A.Z.'s narrative language "has become a huge obstacle" and a safety concern. (ECF No. 21 at 6).

Gress recommended that A.Z. consult with Dr. Roberts, a speech/language pathologist with a doctorate in speech and hearing science, who is certified as a MindWing trainer with

---

[1] All references to page numbers are to the page identification number generated by the Court's electronic filing system that corresponds to the administrative record page number.

extensive training and professional experience in advanced narrative language intervention. (ECF No. 21 at 6.) Dr. Deepa Menon ("Dr. Menon"), A.Z.'s primary physician, explained A.Z.'s medical diagnoses have profoundly impacted A.Z.'s speech and language abilities and that specialized speech therapy in the form of the Story Grammar Marker program is essential. The Story Grammar Marker program is a type of narrative language intervention that is backed by research. (ECF No. 21 at 224). In March of 2020, A.Z. underwent an assessment with Dr. Roberts, who deemed A.Z. in need of targeted narrative language treatment. In Dr. Robert's medical opinion:

> [A.Z.] demonstrates multiple speech[,] language [and] learning issues. He has developed words and sentences but struggles significantly sharing, for example, the events of the day. Despite learning to read, he has made limited gains in narrative development, the highest level of language. Therefore, his stories are limited and lack perspective taking. This interferes with his ability to access the curriculum and participates [sic] in social interactions. He cannot tell events if something has occurred, which may have a positive or adverse effects. This poses significant implications on the potential for [A.Z.]'s independent functioning as, should his safety come into jeopardy, he would not be able to be a valid and reliable reporter.
>
> Moreover, [A.Z.] has word finding problems, often unable to come up with or know the word for an object or a way to talk about it. In addition, he struggles understanding and interpreting social cues. Finally, [A.Z.] demonstrates executive function difficulties, which interfere with development of situational awareness, including but not limited to the ability to observe, orient, decide, and act.
>
> Given the complexity of [A.Z.]'s speech [and] language needs, he requires a therapist with specializations in areas that are not traditional speech [and] language therapy. He requires support to provide linear order to the chaos of his stories for academic and social interactions. This requires an understanding of narratives and impact of these on social and academic experiences.

(ECF No. 21 at 76).

Dr. Roberts began treating A.Z. in March of 2020. (ECF No. 21 at 77).

**B. Mr. Zucca Appeals Anthem's Decision.**

Anthem has been designated as the Claims Administrator for the Plan. (ECF No. 21 at 188). Due to the COVID-19 pandemic, Anthem waived member cost-sharing for out of network telehealth services through July of 2020; thus, the services Dr. Roberts provided from March of 2020 to July of 2020, were covered at the in-network benefit rate. Realizing the cost-sharing waiver would end, Mr. Zucca attempted to obtain authorization to continue A.Z.'s treatment with Dr. Roberts on an "in for out" basis. (ECF No. 21 at 2-3, 25).

According to the language of the Plan, an "in for out" basis refers to "where there is no network Provider available for the Covered Services, the Plan may authorize the network cost share amounts (deductible and/or coinsurance) to apply to a claim for a Covered Service you may receive from an out-of-network Provider." (ECF No. 21 at 15).

On November 9, 2020, Anthem denied the request in a letter to Mr. Zucca on the basis that Mr. Zucca did not contact Anthem prior to receiving the services of Dr. Roberts. (ECF No. 21 at 19). On November 20, 2020, Mr. Zucca followed up with Anthem. (ECF No. 21 at 24). Dr. Roberts also requested to be considered as "in-network". (ECF No. 21 at 30). On December 14, 2020, Anthem again responded to Mr. Zucca, noting it was retaining its original decision, because "[t]here are in-network doctors that can provide this service." (ECF No. 21).

The Plan sets forth a multi-step appeal process. (ECF No. 28 at 6) Upon receipt of an adverse benefit determination, the claimant may file an appeal ("Level One Appeal"), after which the Plan Administrator or its designee [in this case Anthem] will make a decision. On January 4, 2021, Mr. Zucca initiated a Level One Appeal. The documentation Mr. Zucca submitted in support of the appeal established, "[e]ach of the providers in our area who participate with Anthem have agreed their services are no longer a best match for A.Z.'s needs". (ECF No. 21 at 35). On January 11, 2021, Mr. Zucca provided Anthem with Dr. Roberts' report and notes. (ECF No. 21 at 73-80,

355). On January 28, 2021, Anthem denied Mr. Zucca's appeal stating, "[y]our plan network has providers with the same skills". (ECF No. 21 at 69).

On February 18, 2021, Anthem notified Mr. Zucca that they have received Dr. Roberts' request, and that with that request, they "got information that we didn't have during our review" of the initial appeal. (ECF No. 21 at 88). Anthem then assigned a doctor specializing in pediatrics to review the information. That doctor came to the same conclusion and Anthem again denied Mr. Zucca's appeal. (ECF No. 21 at 120).

A claimant may appeal the Level One Appeal decision (a "Level Two Appeal"), after which the appeal is reviewed following the same procedures, again independent of the original decision. Neither the person involved in the prior adverse determination nor that person's subordinate can participate in the Level Two Appeal. (ECF No. 21 at 188). On March 27, 2021, Mr. Zucca initiated a Level Two Appeal. On April 26, 2021, Anthem denied Mr. Zucca's Level Two Appeal, stating "your plan network has providers with the same skills who are able to provide the requested services". (ECF No. 21 at 285-86). At no point in the appeals process did Anthem identify any in-network providers that could provide the services that Mr. Zucca requested – specifically, A.Z's MindWing and Story Grammar Marker program treatments.

On May 21, 2021, Mr. Zucca then requested a voluntary external review by an Independent Review Organization. (ECF No. 21 at 351-82). On June 4, 2021, Anthem denied Mr. Zucca's request for external review. (ECF No. 21 at 389). Anthem claimed, "coverage decision was not based on medical judgment". (ECF. No. 21 at 389).

On July 13, 2021, Plaintiff, Mark Zucca filed the instant matter seeking to recover benefits, a declaratory judgment, and for attorney fees. (ECF No. 1). Mr. Zucca amended his complaint on

5

March 9, 2022. (ECF No. 24). On March 29, 2022, the parties filed a cross motions for judgment on the administrative record followed by oppositions and replies.

## II. Motion to Strike

On May 06, 2022, Defendants filed a Motion to Strike Exhibits 1 and 2 attached to Plaintiff's Reply. (ECF No. 34). Plaintiff opposed the motion (ECF. No. 34) and Defendant replied (ECF No. 36).

This Court is under an obligation to consider only the evidence available to the administrator at the time the final decision was made. *See McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1049, 1064 (6th Cir. 2014). Because the exhibits attached to Plaintiff's Reply were not a part of the Record when Anthem made its decision, this Court cannot consider them. (*See* ECF No. 34). Accordingly, Defendants' motion to strike Exhibits 1 and 2 attached to Plaintiff's Reply is GRANTED.

## III. Standard of Review

This case concerns whether Anthem's determination under a plan governed by ERISA was proper. Pursuant to §502 of ERISA, a beneficiary or plan participant may sue in federal court to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(B). A court reviewing an administrator's decision under a benefit plan subject to ERISA applies a de novo standard of review unless the administrator possessed discretionary authority to determine benefits eligibility or construe the terms of the plan. *Dobrski v. Ford Motor Co.*, No. 1:14-CV-02111, 2015 WL 1880378, at *1 (N.D. Ohio Apr. 24, 2015). When an administrator has the previously referenced discretionary authority, a court reviews such a decision

6

under the arbitrary and capricious standard. *Seiser v. UNUM Provident Corp.*, 135 F.App'x 794, 796-97 (6th Cir. 2005).

Under the arbitrary and capricious standard, "[a] decision regarding eligibility for benefits is not arbitrary and capricious if the decision 'is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 501 (6th Cir. 2010). "[T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action." *Smith v. Cariten Ins. Co.*, No. 2:08-CV-177, 2008 WL 11342994, at *8 (E.D. Tenn. Dec. 3, 2008) (quoting *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003)). "'When applying the arbitrary and capricious standard, the Court must decide whether the plan administrator's decision was rational in light of the plan's provisions.'" *Id.* (quoting *McDonald*, 347 F.3d at 169). To put it simply, "'when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" *Id.* (quoting *McDonald*, 347 F.3d at 169). When reviewing the Plan Administrator's decision, "a court may consider only the evidence available to the administrator at the time the final decision was made." *Hoffman v. Nationwide Mutual Ins. Co. Short-Term Disability Plan*, No. 2:19-CV-4360, 2021 WL 4304576 at *10 (S.D. Ohio Sept. 22, 2021) (quoting M*cClain v. Eaton Corp. Disability Plan*, 740 F.3d 1049, 1064 (6th Cir. 2014). Accord *Dobrski,* 2015 WL 1880378, at *2. Arbitrary and capricious review is not "without some teeth." *McDonald*, 347 F.3d at 172 (quoting *Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1107-08 (7th Cir. 1998)). "Deferential review is not no review and deference need not be abject." *Id.* (quoting *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001)).

7

The parties do not dispute whether the Plan vests Anthem with discretion in its implementation and interpretation of the Plan. As such, the parties agree that this Court must apply the arbitrary and capricious standard here.

### IV. Legal Analysis

**A. Deliberate and Principled Reasoning Process.**

After reviewing the Record, this Court concludes the Anthem's decision was the result of a deliberate and principled reasoning process. Defendants argue Anthem's review of the evidence placed before it was not hastily made nor uninformed. Anthem considered letters from the Patient Care Assistant (PCA), speech therapists, the child's mother, additional letters from Mr. Zucca and his wife, an additional letter from the A.Z.'s speech therapist, A.Z.'s medical records, and an order for speech therapy signed by Dr. Narindar Aingh. (ECF No. 29 at 5). In addition to these records, Anthem also considered internally prepared summaries of those documents.

Defendants argue that Anthem considered several factors in reaching the decision to decline to consider Dr. Roberts as in-network. First, Anthem looked to the specific diagnoses of Mr. Zucca's son, which was autism spectrum disorder, mixed receptive language disorder and disruptive behavior in a pediatric patient, as well as the treatments prescribed for him. (ECF No. 29 at 10). Then Anthem considered the type of treatment Dr. Roberts provided and compared the treatments to those that in-network providers performed. (ECF No. 29 at 10). Defendants argued that when Anthem compared those diagnoses and treatment to the care available via in-network providers, Anthem found providers at locations within the network that were able to provide the requisite treatment. (ECF No. 29 at 10). The above-described process demonstrates that the decision by Anthem was the result of a deliberate and principled reasoning process.

Additionally, Mr. Zucca argued that Anthem did not review appeals independently. Mr. Zucca based this argument on the fact that the reviewer for each appeal was provided with the underlying decisions. (ECF No. 28 at 13). However, whether the reviewer of appeals had access to the underlying decision is irrelevant as the Plan's description of the appeals process does not state the reviewer of the appeals would not have access to such information. (ECF No. 21 at 187). The Plan states, "neither the person who made the adverse determination nor that person's subordinate will participate in the decision on the appeal." *Id.* Accordingly, the reviewer of subsequent appeals was not required to ignore the previously tendered decisions. Based upon the Record before this Court, Anthem's conduct was in accordance with the Plan's description on the appeals process.

Thus, the Court finds that Anthem utilized an established process and considered a vast number of documents offered by the Mr. Zucca when coming to its conclusion. However, finding that Anthem used a deliberate and principled reasoning process does not end the inquiry. Anthem's conclusion must also be supported by substantial evidence to stand.

**B. Determination Not Supported by Substantial Evidence.**

"'Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *General Med., P.C. v. Azar*, 963 F.3d 516, 520 (6th Cir. 2020) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). An administrator's decision will pass muster under this substantial evidence test if a rational person could conclude that the evidence was "adequate" to justify the decision. *Davis v. Hartford Life & Accident Insurance Co.*, 980 F.3d 541, 549 (6th Cir. 2020). This Court finds the Anthem's decision was not supported by substantial evidence.

9

Defendants cite *Smith v. Cariten Ins. Co.*, No. 2:08-CV-177, 2008 WL 11342994 (E.D. Tenn. Dec. 3, 2008) as a guiding case. *Cariten*, however, is easily distinguishable from the instant case. In *Cariten* the plaintiff seeks the "best care" when other listed in-network providers are available to provide the services the plaintiff requested. *Cariten Ins. Co.*, 2008 WL 11342994 at *10-12. This is not the case here. The question is not whether Dr. Roberts provides services that are better than in-network providers. The question here is whether there are in-network providers that offer the services that Dr. Roberts has provided to A.Z.

Here, the Record indicates that Anthem decided not to recognize Dr. Roberts as an in-network provider because there were in-network providers that have the same skill who are able to provide the requested service. (ECF No. 21 at 285-86). Defendants argue that they provided a list of in-network providers who could perform the services Mr. Zucca requested for A.Z. Mr. Zucca argues that A.Z. requires more specialized treatment in the form of advanced narrative language intervention. Given the complexity of A.Z.'s speech/language needs, he requires a therapist with specialization in areas that are not traditional speech/language therapy. (ECF No. 21 at 76).

It is true that Defendants provided a list of four medical providers that are equipped to provide medical services to individuals with speech disorders and other related medical conditions. (ECF No. 21 at 231, 379). However, the Record fails to demonstrate that any of the four providers can provide A.Z. with treatment: one is a nursing home therapist; one is an early intervention provider who exclusively treats the 0-3 years old age group; one is a provider with a 158-child waiting list; and one is a provider that is not licensed to practice in Mr. Zucca's resident state of Pennsylvania. (ECF No. 21 at 55, 201, 219, 220, 223, 231). Moreover, nothing indicates that any of the listed providers can provide A.Z. with the necessary specialized treatment, as none of the

10

providers are certified as a MindWing trainer or has the ability to treat A.Z. using the Story Grammar Marker program. Defendants assert the denial of Dr. Roberts being treated as an in-network provider for purposes of the plan was based on the existence of providers in Anthem's network who could perform substantially similar services. (ECF No. 30 at 9). Therefore, whether A.Z.'s medical treatment is necessary need not be decided by this Court. Accepting that A.Z.'s medical treatment is necessary, the question remains whether the stated basis for denial is proper.

Defendants argue that Mr. Zucca's rejection of an in-network provider with current availability, Dr. Gatziolis, is proof that Anthem's decision was based on substantial evidence and that Mr. Zucca simply wanted Dr. Roberts to treat A.Z. instead. This Court rejects Anthem's assertion. Anthem suggested Dr. Gatziolis as an in-network provider that could allegedly perform the requested services. However, Dr. Gatziolis is trained in speech production disorders, like stuttering. (ECF No. 30 at 16). The Record does not demonstrate, and Defendants fail to argue, that Dr. Gatziolis is a certified MindWing trainer or has the ability to treat A.Z. using the Story Grammar Marker program, which A.Z. receives from Dr. Roberts.[2] Thus, the rejection by Mr. Zucca is not proof that Defendants' decision was based on substantial evidence, rather it simply demonstrates that Dr. Gatziolis cannot perform the requested services.

Defendants have failed to offer any other evidence to demonstrate that substantial evidence supports the decision not to consider Dr. Roberts as an in-network provider. Although Defendants attempt to support the decision by arguing that there were in-network providers able to perform the required services, the Record belies this argument. Accepting that A.Z. requires specialized

---

[2] Mr. Zucca offered additional information supporting his argument that Dr. Gatziolis was not able to treat A.Z.; however, because the referred information was part of the Record, this Court did not consider such information when forming its conclusion.

advanced therapies, Defendants have failed to offer any in-network provider that could offer the necessary treatment. To the contrary, the Record indicates that none of the providers suggested by Defendants as alternative in-network providers to Dr. Roberts could provide such specialized treatments. As such, Defendants' decision to not recognize Dr. Roberts as an in-network provider is not supported by substantial evidence. Because the decision was not supported by substantial evidence, this Court finds Defendants acted arbitrarily and capriciously in denying Mr. Zucca's request to recognize Dr. Roberts and as in-network provider.

## V.  Remedy

Next, the Court must consider the appropriate remedy: whether to remand to Anthem for reconsideration of Mr. Zucca's request or to award benefits directly to Mr. Zucca. United States District courts "'must have considerable discretion to craft a remedy after finding a mistake in the denial of benefits.'" *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006). "[W]here the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled, the appropriate remedy generally is remand to the plan administrator." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 171 (6th Cir. 2007) (quoting *Elliott v. Metropolitan Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006)). Where a claimant clearly is entitled to disability benefits, courts have awarded benefits to the claimant without remand to the plan administrator. *See e.g., Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 551 (6th Cir. 2015) (Finding that a remand would be futile whether the evidence demonstrated that claimant was disabled and entitled to benefits); *see also Cooper*, 486 F.3d at 171; *Hayden v. Martin Marietta Materials, Inc. Flexible Benefits Program*, 763 F.3d 598, 609 (6th Cir. 2014) (remanding where claimant clearly established that she was entitled to benefits); *Calhoun v. Life Ins. Co. of N. Am.*, 665 F. App'x 485, 497 (6th Cir. 2016)(remanding for reinstatement of benefits);

*Kalish v. Liberty Mut./Liberty Life Assurance Co.*, 419 F.3d 501, 513 (6th Cir. 2005) (concluding that the appropriate remedy was an immediate award of benefits rather than a remand to allow the plan administrator to consider evidence that it had previously ignored). The Sixth Circuit has explained that "Plan administrators should not be given two bites at the proverbial apple where the claimant is clearly entitled to disability benefits. They need to properly and fairly evaluate the claim the first time around; otherwise they take the risk of not getting a second chance, except in cases where the adequacy of claimant's proof is reasonably debatable." *Cooper*, 486 F.3d at 172.

### A. Mr. Zucca was denied benefits to which he was clearly entitled.

Importantly, Anthem's only stated reason for denying Mr. Zucca's request to treat Dr. Roberts as an in-network provider for purposes of the plan was based on Anthem's insistence that providers existed in Anthem's network who could perform substantially similar services. The Record is clear that Defendants have consistently stated "in for out" benefits will be provided when there is no-network provider available within a reasonable radius of Mr. Zucca's home who has the same skill as Dr. Roberts. (ECF No. 21 at 128, 133). The January 28, 2021 denial letter states, "[y]our plan covers services at a higher benefit level given by a provider outside the plan network *if we do not have a provider in our network that has the same skills*." (ECF No. 21 at 133 (emphasis added)). The February 18, 2021 denial letter states, "[y]our plan does not cover services given by a provider that is outside of the plan network *except where we do not have a provider in our network that has the same skills*". (ECF No. 21 at 128 (emphasis added)).[3]

However, the Record demonstrates that there are no in-network providers who are certified as MindWing trainers and have the ability to treat A.Z. using the Story Grammar Marker program.

Although Defendants set forth several names of in-network providers, Mr. Zucca demonstrated why each of the proposed providers did not possess the same skills as were needed to treat A.Z. (ECF No. 21 at 55, 201, 219, 220, 223, 231). Anthem, however, produced no credible evidence that undermined Mr. Zucca's evidence that the proposed in-network providers could not provide the required treatment for A.Z.

Defendants affirmatively stated that Dr. Roberts would be treated as an in-network provider in the event that no in-network provider within a reasonable radius of Mr. Zucca's home that had the same skills as Dr. Roberts. There being no such in-network provider, it would be futile to return this matter to Anthem for further consideration. Anthem has had multiple opportunities to locate an in-network provider who has the same skills as Dr. Roberts, but has repeatedly failed to do so. Here, Anthem should not be give a "second bite at the proverbial apple" as the adequacy of Mr. Zucca's evidence is not "reasonably debatable." *Cooper*, 486 F.3d at 172.  Accordingly, Mr. Zucca has demonstrated that he is clearly entitled to benefits.

ERISA authorizes the Court to award attorney's fees. 29 U.S.C. §1132(g)(1). A fee claimant need not be a "prevailing party" to be eligible for an attorney's fees award under § 1132(g)(1). A claimant is entitled to attorney's fees "if the court can fairly call the outcome of the litigation some success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255-56, 130 S.Ct. 2149 (2010). Additionally, § 1132(g)(1) expressly grants district courts "discretion" to award attorney's fees "to either party." This Court awards attorney's fees and Court costs to Mr. Zucca, in the amount that shall be determined with additional briefing.

Because of the holiday season, Mr. Zucca shall have sixty days from the date of this Opinion and Order to file additional briefing setting forth the total amount of benefits, attorney's fees and Court costs to which he is entitled. In the same application, Mr. Zucca may also request

interest on the award of disability benefits and attorneys' fees. *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 585 (6th Cir. 2002) (explaining that a district court has discretion to order the payment of pre-judgment interest on a disability benefits award); 29 U.S.C. § 1132(g)(1) (stating that "[i]n any action under this title ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party"). Defendants shall have fourteen days after Mr. Zucca files his brief to respond. Mr. Zucca shall file any reply within seven days.

## VI. Conclusion

In light of the reasoning set forth above, Defendants' Motion to Strike Exhibits 1 and 2 attached to Plaintiff's Reply (ECF No. 34) is GRANTED.

Additionally, Defendants' Motion for Judgment on the Administrative Record (ECF No. 29) is DENIED, and Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 28) is GRANTED. The Court therefore enters JUDGMENT in favor of Plaintiff as to Plaintiff's claim to recover benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B).

It is so ordered.

DATED: November 21, 2022

*s/Carmen E. Henderson*
**Carmen E. Henderson**
**United States Magistrate Judge**